Tyler Travis Sheets (SBN 315891)
  tsheets@shaslaw.com
Armen Aslanian (SBN 318965)
  aaslanian@shaslaw.com
SHEETS & ASLANIAN
633 West Fifth Street, Fl. 26
Los Angeles, CA 90071
Telephone: (213) 266-9000
Facsimile: (213) 266-9150

*Attorneys for Defendants,*
*Dr. Fred Starr,*
*International Neurofeedback Logistics, Inc.,*
*Myneurva Holdings, Inc.,*
*INL-MD Brain Data Mining LLC,*

# UNITED STATES DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL NEUROFEEDBACK LOGISTICS, INC., a Canadian corporation; MYNEURVA HOLDINGS, INC., a Wyoming Corporation; INL-MD BRAIN DATA MINING LLC, a Wyoming limited liability company; and DR. FRED STARR, a United States citizen and resident of Costa Rica;<br><br>      Plaintiffs,<br><br>   v.<br><br>TELEHEALTH MEDICAL GROUP, INC., a California corporation, REGENERATIVE MEDICAL GROUP, INC., a California corporation, DR. BRYN HENDERSON, a resident of California, ARASI PRASAD, a resident of India; Dr. | Case No. cv-8:18-cv-1963<br><br>**COMPLAINT FOR:**<br>1. **Breach of Contract**<br>2. **Conversion**<br>3. **Fraudulent Concealment**<br>4. **Negligent Misrepresentation**<br>5. **Rescission**<br>6. **Unfair Competition [Bus. & Prof. Code §§ 17200 *et seq.*]**<br>7. **Common Count**<br>8. **Intentional Interference with Contractual Relations**<br>9. **Breach of Fiduciary Relationship**<br>10. **Defamation – Slander**<br>11. **Intentional Interference with Economic Advantage**<br>12. **Violation of Racketeer Influenced and Corrupt Organizations Act** |

---

**COMPLAINT**

1

HOSSEIN VAZIRIPOUR, a resident of California and DOES 1-10, inclusive,

Defendants.

13. **Account Stated**
14. **Misappropriation of Trade Secrets**
15. **Quantum Meruit**

**JURY TRIAL DEMANDED**

INTERNATIONAL NEUROFEEDBACK SOLUTIONS, INC., MYNEURVA HOLDINGS, INC., INL-MD BRAIN DATA MINING, INC., and DR. FRED STARR, by and through their attorneys, allege as follows:

## I.  THE PARTIES

1.  Defendant, TELEHEALTH MEDICAL GROUP, INC. ("TMG"), is, and was at all times mentioned herein, a California corporation with its principal place of business and headquarters located in Orange, California.

2.  Defendant, REGENERATIVE MEDICAL GROUP, INC. ("RMG"), is, and at all times mentioned herein was, a California corporation with its principal place of business and headquarters located in Orange, California.

3.  Defendant, DR. BRYN HENDERSON ("Dr. H"), is, and was at all times mentioned herein was, a resident of Orange County, California.

4.  Defendant, ARASI PRASAD ("Arasi"), is, and at all times relevant herein, and all times relevant herein was, a resident of India. She was at all relevant times an employee and agent of each of the other named defendants and thereby targeted the State of California in that role.

---

**COMPLAINT**

2

5.   Defendant, Dr. HOSSEIN VAZIRIPOUR ("Dr. HV" and collectively the parties identified in paragraphs 1-5 herein are referred to as "Defendants"), is, and at all times relevant herein was, a resident of California.

6.   Plaintiff, INTERNATIONAL NEUROFEEDBACK LOGISTICS, INC. ("INL"), is, and was at all times mentioned herein, a corporation formed under the laws of Canada with its principal place of business in Canada.

7.   Plaintiff, MYNEURVA HOLDINGS, INC. ("Myneurva"), is, and was at all times mentioned herein, a Wyoming corporation with its principal place of business in Wyoming.

8.   Plaintiff, INLD-MD BRAIN DATA MINING LLC ("INL-MD"), is, and was at all times mentioned herein, a Wyoming limited liability company, with the following members: (A) Julie Globus, a citizen of New York, and (B) Dr. Fred Starr a resident of Costa Rica.

9.   Plaintiff, Dr. FRED STARR ("Dr. Starr" and collectively the parties individually identified as a Plaintiff in paragraphs 6-9 herein are referred to as "Plaintiffs") is a United States citizen residing in Costa Rica.

10. Plaintiffs do not know the true names of Defendants DOES 1 through 10 and therefore sues them by those fictitious names. On information and belief, each of those Defendants was in some manner legally responsible for wrongs alleged in the

---

**COMPLAINT**

Complaint and for Plaintiffs' damages. Plaintiffs will identify the names and capacities and relationships of DOES 1 through 10 by amendment when and if Plaintiffs ascertain such information. Each reference to a named Defendant below includes a reference to fictitiously names Defendants.

11. Upon information and belief, at all times mentioned herein, Defendants were agents and employees of their co-Defendants and acting within the course and scope of such agency and employment with consent of their co-Defendants and doing the things alleged in this Complaint within the course and scope of said agency and employment. On information and belief, each of the Defendants is, and at all times relevant to this Complaint was, the agent, employer, partner, joint venture, affiliate, and/or co-conspirator of the other Defendants and in doing the things alleged herein, was acting in the course and scope of such positions at the direction of and/or with the permission, knowledge, consent, or ratification of the other Defendants.

## II.    JURISDICTION AND VENUE

12. This Court has jurisdiction of the claim herein pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331. This civil action arises under the laws of the United States. Plaintiffs are allegation a violation of their rights under Title IX of the Organized Crime Control Act of 1970, as amended, 18 U.S.C. §§ 1961 *et seq.*

13. Venue herein is proper under 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b).a

## III.    PRELIMINARY ALLEGATIONS

14. Plaintiffs are in the business of leasing quantitative electroencephalography (qEEG) equipment and providing analytical services to healthcare providers and provide neurofeedback assessment from electrical brain activity. The equipment and services provide patients an opportunity to self-regulate and temper certain neurological conditions.

15. Defendant, TMG, is a healthcare provider that leased neurofeedback equipment from Plaintiffs and also orally agreed to procure qEEG analysis and other services in connection with the equipment for compensation.

16. Defendant, Dr. H, is a licensed medical professional and an agent, director, and executive officer of TMG and RMG.

17. Upon information and belief, defendant, Arasi, is the Director of Business Operations for TMG and RMG.

18. Defendant, Dr. HV, has acted with apparent authority of an agent of Dr. H, TMG, and/or RMG in dealing with Plaintiffs. Upon information and belief, Dr. HV is not a licensed medical professional but has held himself out to be one, using various pseudonyms to conduct unlawful business transactions in the United States and in Mexico.

19. This dispute originates from an accumulation of suspicious conduct by Dr. H's medical practice at TMG and RMG, which Plaintiffs soon found untenable including reports of the importation and injection of unsterilized stem cells into patients, unlawful employment of unlicensed individuals in the practice of medicine, and other dangerous and unlawful activities. Around that same time, Defendants evaded simple questions and ceased making payments to Plaintiffs for the value of their services.

20. The relationship began Dr. H held himself out as a mentor to Dr. Starr early in their relationship and garnered trust upon with the intent that Dr. Starr would rely to his detriment by divulging confidential information that Dr. H would later use for his own profit.

21. Upon information and belief, Dr. H acted with the malicious, wanton and willful intent of sullying Dr. Starr's professional reputation by spreading false rumors about him for the purpose of destroying the trust Dr. Starr's patients placed in him.

22. Upon information and belief, this scheme involved spreading false rumors about the safety and efficacy of Dr. Starr's methods and representing Dr. H's practices as more efficacious and safer. In fact, Dr. H's practices were, unbeknownst to Dr. Starr at that time, discordant with regulations having the effect of law, potentially perilous to patient's health, and less efficacious medical procedures.

23. Upon information and belief, Dr. H also used confidential information received from Dr. Starr to under false pretenses through a corporate espionage scheme in violation of California and federal laws in order to avoid paying Dr. Starr and to unfairly, fraudulently, and unlawfully profit from Dr. Starr's efforts.

24. As a result of such corporate espionage, Dr. H learned information that had been maintained as a valuable trade secret by Plaintiffs independently from the value of the information itself.

25. Dr. Starr and Dr. H's business relationship began with an oral agreement to provide neurofeedback equipment and to analyze readouts of Defendants' patients in consideration for payments, which initially were made on a regular schedule.

26. Defendants, through Dr. Starr and other agents, both orally and, upon information and belief in writing, represented to Dr. Starr and Plaintiffs that their practice was medically and legally legitimate and compliant and that it would remain so for the duration of the relationship. Upon information and belief that statement was false when it was made.

27. Dr. H further represented to Plaintiffs and, through his agents to Plaintiffs' outside general counsel, that they intended to formalize the arrangement by a written contract. Upon information and belief, that statement was false when it was made, and Plaintiffs' efforts to finalize a written contract were

28. Defendants made these statements for the purpose of inducing reliance by Plaintiffs and to retain possession of the neurofeedback equipment and analytical services.

29. In reliance on these false representations, Plaintiffs continued to allow Defendants use of the equipment and continued to provide analytical services at a cost to itself.

30. Beyond failing to pay for the use of the equipment and for the services provided, Dr. H and TMG used the equipment in such a way that required the approval of the Food and Drug Administration ("FDA") which Dr. H and TMG unlawfully failed to secure.

31. In further contravention of the law, Dr. H and TMG allowed the untrained and unlicensed personnel, including Dr. HV, to practice medicine by misrepresenting their credentials to patients and asking that those patients and personnel keep such information from Plaintiffs.

32. When questioned regarding a federal investigation of Defendants' practice by Dr. Starr, Dr. H responded that the investigation and the complaints were baseless. Meanwhile, Dr. H took extreme precaution to ensure that federal investigators, colleagues, and particularly Plaintiffs would not discover how far from legal and regulatory compliance Defendants' practices and procedures were.

33. Upon information and belief, Dr. H learned of and misappropriated confidential, proprietary and trade secret information in connection with his breach of the many contractual agreements he made with each Plaintiff.

34. Plaintiffs' investigation revealed the following: (1) Dr. H failed to disclose conflicts of interest related to the other Defendants competitive behavior against Plaintiffs, and (2) Dr. H improperly influenced relationships between Plaintiffs and their vendors and end consumers of the goods and services they provided.

35. On information and belief, using information garnered by a series of conversations spread across several years, Dr. H was accessed Plaintiffs' computer systems by abusing its confidential relationship with Dr. H.

36. On information and belief, Dr. H used software which copied hundreds of files from Dr. Starr and other Plaintiffs' computer systems used in their business.

37. On information and belief, the confidential, proprietary, and trade-secret-protected information surreptitiously collected included, *inter alia*, the following:

- Advanced and likely novel analytical techniques used to assess QEEG readouts,

- Information regarding the identities and qualities of various vendors and sources of equipment,

- Internal guidelines, company rate structures, financial information, strategic opportunities, allocation of resources, and performance metrics.

---

**COMPLAINT**

38. Dr. H, on TMG's and his own behalf, made threatening phone calls on which he raised his voice and made veiled threats to Plaintiffs' employees to prevent them from asking questions and learning of regulatory violations.

39. On information and belief, Dr. H recommended that his patients not rely on Dr. Starr and misrepresented his methodology as inferior.

40. Dr. H further told his staff that Dr. Starr and Plaintiffs approved of his sub-standard practices knowing that the statement was false when made.

41. These false statements have, on information and belief, severely damaged Dr. Starr and Plaintiffs' reputational interests.

42. Defendants' also conspired to prevent Plaintiffs from exercising legal rights by reporting unlawful administration of medicine, which, on information and belief, prevented authorities from learning of violations.

43. On information and belief, Dr. H was in violation of several state and federal healthcare safety laws and is or was at relevant times under investigation for those likely violations.

44. On information and belief, Defendants were importing stem cells for injection into the body that were not properly sterilized in violation of Customs and Border Protection ("CBP") and FDA regulations from clinics in Mexico.

45. Dr. H also published false statements regarding Plaintiffs practices to third-party vendors which were made with awareness that Plaintiffs had an economic relationship with those vendors.

46. On information and belief, Dr. H intended to disrupt the relationship by falsely touting his sub-standard method as superior to Plaintiffs and falsely claiming Dr. Starr approved of those methods, which were in violation of professional standards.

47. As the relationship soured because of Defendants' failure to pay for services rendered and goods received, Dr. H began making threatening phone calls to Plaintiffs' staff, often screaming at them and falsely accusing them of various wrongs.

48. As a proximate and direct result of Defendants non-payment for services rendered and goods provided, Plaintiffs have suffered harm by not receiving the expected benefits of their agreements with Defendants.

49. As a proximate and direct result of Defendants retention of the benefits of services rendered the use of goods leased without paying for either, Defendants have been unjustly enriched in an amount to be proven at trial and to which Plaintiffs are entitled.

50. As a proximate and direct result of Defendants' conspiracy to interfere with Plaintiffs' business relationships with third-party vendors, Plaintiffs are entitled to

recover the losses suffered as a result of such interference in an amount to be proven at trial.

## IV.    CAUSES OF ACTION

### First Cause of Action (Breach of Oral Contract)

51. Plaintiffs re-allege and incorporate by reference the above paragraphs of this Complaint as though fully set forth herein.

52. On or about February of 2014 Defendant, Dr. Henderson contacted Plaintiffs Dr. Starr and, during that conversation, they entered into an oral contract for the use of neurofeedback equipment, maintenance of that equipment, and services necessary for the effective use and application of that equipment, including quantitative analysis of electroencephalograms.

53. Through acceptance of the equipment and continued requests for analysis of the electroencephalograms, Defendants manifested intent to be bound by contract.

54. In or around February of 2014, Plaintiffs began providing and Defendants received the use of neurofeedback equipment and attendant services on the understanding that use of the equipment and analytical services would incur a cost to Plaintiffs.

55. Defendants knew that these services were being provided and repeatedly promised to pay for their reasonable value.

56. Defendants breached this oral agreement by failing, neglecting, and refusing to compensate Plaintiffs in full for the services provided to Defendants under the oral agreement.

57. Plaintiffs expected to receive payment as it had received for so long as the equipment and services were provided. That expectation was not fulfilled, and the harm to Plaintiffs caused by Defendants non-performance is at this time in excess of $50,000.

58. Defendants breach of the agreement was material in that complete failure to pay for months of use of equipment and related services destroyed the very purpose of the agreement for Plaintiffs.

59. Plaintiffs performed all of their obligations under the contract at all times relevant herein.

60. Defendants breach of the agreement was a substantial factor in causing Plaintiff's harm.

61. As a proximate result of Defendants' conduct, Plaintiffs are entitled to all compensatory damages in an amount according to proof at trial in excess of this Court's jurisdictional minimum, or alternatively, rescission of the contract with Defendants, plus cost of suit, and all available pre-judgement interest.

**COMPLAINT**

13

62. Defendants' conduct harmed Plaintiffs, including, but not limited to, by not having the benefits of the use of the neurofeedback equipment, the costs of replacement parts for the equipment, the time spent providing analysis of the neurofeedback data, and the costs of employing personnel for the purpose of pursuing the amounts owed.

63. As a proximate result of Defendant's conduct, Plaintiffs are entitled to compensatory damages in an amount according to proof at trial in excess of this Court's jurisdictional minimum, or alternatively, rescission of the contract with Defendants, plus cost of suit, and all available pre-judgement and post-judgment interest.

## Second Cause of Action (Conversion – Against all Defendants)

64. Plaintiffs re-allege and incorporate by reference the above paragraphs of this Complaint as though fully set forth herein.

65. Plaintiffs entrusted neurofeedback equipment which was Plaintiffs' property to Defendants. The equipment was entrusted to Defendants for the purpose of performing neurofeedback analysis in adherence with certain standards that were made known to Defendants and of which Defendants were aware. Plaintiffs entrusted the equipment for so long as Defendants continued making payments.

66. Defendants did not adhere to the required standards, but instead used the equipment in sub-standard ways that increased the costs of maintenance of the equipment which Plaintiffs continued to provide. Defendants did not adhere to the required standards because doing so would have increased Defendants' costs.

67. Defendants failed to pay for the use of the equipment and when they did pay, the payments were often deficient in relation to the amount due.

68. Upon information and belief, Plaintiffs made it known that the equipment and any use of it was to be returned and demand for such was made known to Defendant once those standards were not followed and payments were deficient and eventually ceased entirely.

69. In spite of their failure to make payments or follow agreed-upon standards, Plaintiffs kept and continued to use the equipment after the demand for return of the equipment was made.

70. Through retaining the equipment, Defendants intentionally and substantially interfered with Plaintiffs' right to no less than $33,768.22 that Defendants received from insurance companies only because Defendants were entrusted to transfer amounts owed to Plaintiffs.

71. Thus, at the time of the conversion, Plaintiffs had ownership of and immediate right to possession of that amount.

**COMPLAINT**

72. Plaintiffs were further harmed by way of the loss of use of the equipment in its business and its reputational interests by way of the substandard use of the equipment.

73. Plaintiffs also paid significant amounts on the recovery of the equipment and the unpaid amounts for prior use of the equipment.

74. But for Defendants' conversion, Plaintiffs would not have suffered these harms and Defendants' conduct was a substantial factor is bringing each of them about.

75. The amount of money paid to Defendants by insurance companies was in an amount of $33,768.22 and that amount belonged to Plaintiffs but was not used for Plaintiffs benefit in any manner.

76. Defendants conduct was willful, malicious, and fraudulent in that Defendants concealed information, instructed their employees to conceal information, made false statements to vendors and others in the field regarding how the equipment was to be used. For this reason, these acts merit punitive damages.

77. Defendants wrongful conduct was, upon information and belief, carried out against Dr. Windham, a former agent of TMG, who Defendants disparaged with the goal of taking Dr. Windham's patients without having to pay for Dr. Windham's efforts. As such Defendants employed a pattern and practice of this wrongful behavior, proving further that punitive damages are appropriate.

**Third Cause of Action (Fraudulent Misrepresentation – All Defendants)**

---

78. Plaintiffs re-allege and incorporate by reference the above paragraphs of this Complaint as though fully set forth herein.

79. In or round February of 2015, Dr. Henderson spoke with Dr. Starr, his former mentee and current medical director of Plaintiffs, regarding a business relationship whereby Plaintiffs would provide neurofeedback equipment and provide the services necessary to ensure proper application and procedures in exchange for a fee in a mutually beneficial manner.

80. Soon thereafter, Plaintiffs began providing the equipment and services and Dr. Henderson, in turn, paid the agreed upon fees.

81. In or around 2017, Plaintiffs began having difficulty receiving payments, including declined credit card transactions, payment of less than the amount due, and eventually payments ceased altogether.

82. Dr. H had his medical director draft a memorandum of understanding and represented his wish to cement the agreement in a written contract to provide certainty. Upon information and belief, that representation was false when it was made and with the intent to delay any cause of action by Dr. Starr and stave off reasonable suspicion.

83. Around the same time, Plaintiffs began receiving reports from current and former employees of TMG that Dr. H told them to keep information regarding

Defendants' violations of legal and ethical standards and deviations from agreed-upon procedures secret from Dr. Starr, Plaintiffs' Medical Director.

84. Specifically, upon information and belief, Dr. Henderson or agents acting and speaking on his behalf made statements to the effect of, "We can't let Dr. Starr find out about this" and to tell patients that Defendants were planning to break the relationship with Dr. Starr because Dr. Henderson's non-compliant methods were superior.

85. Upon information and belief, these statements were made to conceal material information from Plaintiffs and from Defendants' patients so that Plaintiffs' effort to conduct due diligence would be thwarted while Defendants continued to receive payments without Plaintiffs' knowledge.

86. The information that was intentionally concealed from Plaintiffs related to safety protocols and quality control of the use of the equipment Plaintiffs provided to Defendants and the necessary services related thereto.

87. Moreover, Defendants made misrepresentations to Dr. H and TMG's patients in an attempt to prevent Plaintiffs from learning the true nature of Defendants practice and to maintain profits in spite of substandard and unethical medical practices.

88. Each statement alleged herein that relates to misrepresentation was made known by employees or former employees of Defendants' either directly or indirectly.

---

**COMPLAINT**

18

89. Plaintiffs relied on the Defendants' misrepresentations or concealment by continuing to allow Defendants to use the neurofeedback equipment, providing maintenance services necessary for its proper application, and analysis of the qEEG scans.

90. Plaintiffs' reliance was justifiable because of the relationship of trust Dr. H had curried with Dr. Starr and the fact that Dr. H was a licensed doctor subject to state and federal regulations.

91. Further, Defendants intentionally concealed material information from Plaintiffs that would have caused Plaintiffs to rescind the contract, if known.

92. Defendants engaged in such deceit as a matter of practice and pattern and such practice and pattern was conducted with the willful disregard of the harm it was known to Defendants that Plaintiffs would suffer.

93. Defendants acted with malice and oppression in addition to fraud and with the intent to displace Plaintiffs of money and access to the customers it served.

94. Defendants acted with such intent to defraud at the time the acts alleged in this cause of action took place.

95. Plaintiffs' reliance of Defendants fraudulent concealment caused severe distress, lost profits, missed opportunities, and much more. These harms were piled upon the consequential damages Plaintiffs suffered from Defendants failure to pay.

96. Because Dr. H concealed the nature of federal investigations of his practice and orally represented to him that the nature of the investigations was meaningless, Plaintiffs continued to provide services and goods.

**Fourth Cause of Action (Negligent Misrepresentation – Against all Defendants)**

97. Plaintiffs re-allege and incorporate by reference the above paragraphs of this Complaint as though fully set forth herein.

98. On information and belief, Defendants directed employees to make representations to Plaintiffs with the intent to prevent Plaintiffs from investigating the nature of the unethical provision of medical treatment and misuse of medical equipment leased to Defendants.

99. Patients were told that substandard applications of medical devices leased to Defendants for the purpose of treatment were preferred.

100.    Defendants falsely stated to patients and vendors that Plaintiffs' practiced inferior applications of neurofeedback procedure.

101.    If Defendants did not know these statements were false, as medical professionals they should have known these statements were false, and they made the statements nonetheless.

102.    Defendants also concealed information regarding their regulatory compliance by repeatedly failing to meet legal standards which they knew or should have known were material to Plaintiffs' ongoing contractual relationship.

103.    As a result of Defendants negligent misrepresentations, Plaintiffs suffered monetary damages, reputational harm, opportunity costs, and more in an amount to be proven at trial, but certainly above this Court's jurisdictional minimum, including all pre-judgment and post-judgment interest.

//

**Fifth Cause of Action (Rescission Based on Fraud/Mistake – All Defendants)**

104.    Plaintiffs re-allege and incorporates by reference the above paragraphs of this Complaint as though fully set forth herein.

105.    Defendants induced Plaintiffs to enter into agreements to provide use of its qEEG equipment and related services knowing that Plaintiffs were mistaken about Defendants legal and ethical compliance.

106.    Defendants concealed facts that, if known, would have prevented Plaintiffs from entering into agreements with Defendants, providing use of Plaintiffs' qEEG equipment, and providing Defendants with necessary services.

107.    Defendants fraudulent conduct renders the agreements voidable and subject to rescission at Plaintiffs' option to recover restitution plus interest.

---

**COMPLAINT**

21

108.    Plaintiffs intend service of this Complaint to serve as notice of rescission of all agreements mentioned herein, and hereby offers to restore all consideration and benefits furnished under the agreements as the Court may decree to effectuate this rescission. Plaintiffs seek any and relief that is necessary to adjust the equities between the parties to ensure restoration of the status quo directly before the aforementioned agreement.

109.    Plaintiffs seek restitution of all payments made in connection with the aforementioned agreement, plus interest. *See*, Code Civ. Proc. § 1692.

110.    Plaintiffs are entitled to punitive damages based on Defendant's fraud, oppression, and malice.

111.    Defendants took advantage of a relationship of trust in which Plaintiffs were justified in relying on representations made by Defendants. Defendants knew at the time representations were made to Plaintiffs regarding legal compliance, ability to pay, intent to pay, and more, that they were false.

112.    Defendants acted with the intent to cause injury to Plaintiffs, and they acted with knowing disregard of Plaintiffs' rights. Defendants committed fraudulent acts while under knowledge with substantial certainty that those acts would subject Plaintiff to cruel and unjust hardship.

---

**COMPLAINT**

113.    Defendants repeated these acts in such a way that they became a pattern

and practice of misrepresentation with the intent of inducing further reliance.

**Sixth Cause of Action (Unfair Competition in Violation of Bus. & Prof. Code §§**

**17200 et seq. – Against all Defendants)**

114.    Plaintiffs re-allege and incorporate by reference the above paragraphs of

this Complaint as though fully set forth herein.

115.    Defendants did not comply with state and federal safety regulations,

customs rules, and engaged in the illegal, unlicensed practice of medicine by

representing to patients that Defendants' nurse practitioner was a medical doctor and

the patients referred to her as such.

116.    Dr. H made false statements about other doctors working with TMG in

order to take over those doctor's patients and increase their financial position,

including by having other medical doctors report capable and moral doctors based on

false information.

117.    Defendants conduct as alleged above constitutes unfair competition under

Bus. & Prof. Code §§ 17200 et seq.

118.    Defendants conduct was also unlawful by failing to adhere to professional

standards and safety regulations of federal agencies, including but not limited to the

Food and Drug Administration and Customs and Border Protection.

119.    Plaintiffs has suffered injury-in-fact and has lost money and property as a result of Defendants unlawful, unfair, and/or fraudulent business practices.

120.    Defendants' default renders the contract voidable or subject to rescission with Restitution plus interest at Plaintiffs' option.

121.    Plaintiffs intend service of this Complaint to serve as notice of rescission of the aforementioned agreement, and hereby offers to restore all consideration and benefits furnished by Defendants under the contract as the Court may decree to effectuate this rescission. Plaintiffs seek any and all relief that is necessary to adjust the equities between the parties and to ensure restoration of the status quo directly before the aforementioned agreement.

122.    As a result of Defendants conduct, Plaintiffs' lost the use of equipment, the value of employee's services provided, attorney's fees and other costs of attempts to recover its damages, lost business opportunities and more.

123.    By reason of these acts, Plaintiffs are entitled to restitution of the value of services provided, the value of lost use and enjoyment of the qEEG equipment, costs of attempts to recover, and more in an amount to be proven at trial.

124.    Plaintiffs are entitled punitive damages because of the willfulness of Defendants' conduction and the malice and oppressiveness with which it was carried out. Defendants intended to cause the injuries that made the contract voidable.

Defendants were aware of the dangerousness of their conduct and deliberately failed to avoid those consequences. Defendants have endured severe, cruel, and unjust hardship as a result of Plaintiffs' conduct and indifference toward or intent to cause it.

## Seventh Cause of Action (Common Count – Money Had and Received – All Defendants)

125.    Plaintiffs re-allege and incorporate by reference the above paragraphs of this Complaint as though fully set forth herein.

126.    Defendants received money which belongs to Plaintiffs which, upon information and belief, is an amount exceeding $33,768.22.

127.    This money was intended to be used for Plaintiffs' benefit.

128.    Defendants did not use this money for Plaintiffs' benefit and did not transfer the money to Plaintiffs.

129.    Plaintiffs are entitled to the money Defendants had and received.

## Eighth Cause of Action (Intentional Interference with Contractual Relations – All Defendants)

130.    Plaintiffs re-allege and incorporate by reference the above paragraphs of this Complaint as though fully set forth herein.

131.    Plaintiffs had valid contracts with Brainmaster, Inc. a third-party provider of parts used in neurofeedback equipment.

---

COMPLAINT

132.     After Plaintiffs' use of this third-party parts provider, Defendants were introduced to and began making purchases of a part known as the "Freedom 24" from them.

133.     At all relevant times, Defendants were aware of Plaintiffs' and the third-party's contractual relationship.

134.     Defendants misrepresented Plaintiffs' use of the third-party's product as inferior with full knowledge that Defendants' practices were in violation of professional standards and likely to cause harm.

135.     Upon information and belief, the product Defendants purchased from the third-party was used for unlawful purposes under federal and state safety regulations and professional standards.

136.     Upon information and belief, Defendants claimed Plaintiffs' use of the product was inferior to theirs through explicit statements to the third-party vendor.

137.     These statements were, upon information and belief, made for the purpose of pre-empting the truthful testimony from Plaintiffs to the contrary.

**Ninth Cause of Action (Breach of Fiduciary Relationship – All Defendants)**

138.     Plaintiffs re-allege and incorporate by reference the above paragraphs of this Complaint as though fully set forth herein.

---

**COMPLAINT**

139.    Dr. H established a confidential relationship of trust with Dr. Starr by mechanizing his position in the medical field and his personal history with Dr. Starr that pre-dated any business relationship. Dr. H also habitually concealed material information from Dr. Starr and continued to do so as an agent of TMG. TMG maintained this confidential relationship by concealing Dr. H's unethical and illegal practice in order to continue profiting from Dr. Starr's expertise, and the equipment and attendant services necessary for the neurofeedback analysis.

140.    Dr. Starr provided valuable information to Dr. H relying on a reasonable expectation of privacy, and, upon information and belief, Dr. H manifested an intent to maintain the confidentiality of that information before and after the disclosure.

141.    The expectation of privacy was reasonable based on not only the trust and confidentiality inherent to the relationship, but common social norms would lead any reasonable person to find disclosure for Dr. H's profit jarring and unlikely.

142.    Upon information and belief, Dr. H did disclose and use the valuable information that Dr. Starr revealed to him within that reasonably private context and did so for his own monetary and professional gain.

143.    Upon information and belief Dr. H made that disclosure under the knowledge with substantial certainty that it would harm Dr. Starr and with willful disregard of that knowledge.

---

**COMPLAINT**

27

144.     Dr. Starr suffered harm from Dr. H's breach of trust and wrongful disclosure of information provided as a beneficiary to a fiduciary in the form of consequential damages, lost profits, harm to reputational interests, and reliance damages.

## Tenth Cause of Action (Defamation – Slander – All Defendants)

145.     Plaintiffs re-allege and incorporate by reference the above paragraphs of this Complaint as though fully set forth herein.

146.     Defendants orally represented to third parties that Dr. Starr had approved on procedures that were non-compliant with professional standards, state and federal law, and dangerous.

147.     Defendants knew these statements were false at the time they were made but made them nonetheless in order to disparage Dr. Starr and Plaintiffs for the purpose of co-opting their good character so that Defendants could continue negligent practices at a lower cost to itself and without the costs of Dr. Starr's expertise.

148.     As a result of these disparaging and false statements, Plaintiffs lost many business opportunities, most of which rely on the good name and professional compliance of Plaintiffs.

## Eleventh Cause of Action (Intentional Interference with Economic Advantage – All Defendants)

149.     Plaintiffs re-allege and incorporate by reference the above paragraphs of this Complaint as though fully set forth herein.

150.     Plaintiffs had a third-party economic relationship with vendors of component parts of neurofeedback equipment that was very likely to bear and economic benefit to Plaintiffs in the future.

151.     Defendants knew of the relationship and did not act with due care and even acted intentionally to disturb the relationship by making false and disparaging remarks about Plaintiffs' practice and appropriating Dr. Starr's name in order to boast about his practice's compliance.

152.     Such disruptive conduct was wrong independent of this cause of action because Dr. H intended to practice in a way that did not comply with professional ethical standards for the sake of Defendants' profit and at the risk of his patient's care.

**Twelfth Cause of Action (Racketeer Influenced and Corrupt Organizations Act Violations — All Defendants)**

153.     Plaintiffs re-allege and incorporate by reference the above paragraphs of this Complaint as though fully set forth herein.

154.     Defendants are an enterprise engaged in and the activities of which affect interstate and foreign commerce.

155.     Defendants, Dr. H, Dr. HV, and Arasi, as persons within the meaning of 18 U.S.C. § 1961(3) and as persons associated with said enterprise, conducted and participated, directly and indirectly, in the conduct of the affairs of said enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

156.     The six predicate acts which constitute this pattern of racketeering are:

a.   Employment of a scheme or artifice designed to obtain money or property by false pretenses through use of the mails or wires to transmit communications and make payments for illegally obtained, unsterile stem cells from Mexico. 18 U.S.C. §§ 1341, 1343.

b.   Engagement in economic espionage and theft of trade secrets. 18 U.S.C. §§ 1831-32.

c.   Knowingly possessing a false identification document with the intent of defrauding the United States. 18 U.S.C. § 1028.

d.   Trafficking in goods bearing counterfeit labeling. 18 U.S.C. § 2320.

e.   Conspiring with each other to commit the predicate crimes listed above;

f.   Aiding and abetting the commission of the above predicated crimes through independent fraudulent misrepresentations and statements to conceal material information to substantially assist in the commission of the predicate crimes by the principals.

157.    These six acts of racketeering, occurring within ten years of one another, constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

158.    Plaintiffs were injured in their businesses and property interests by reason of this violation of 18 U.S.C. § 1962, in that, as a direct and proximate result of Defendant's complained of acts, Plaintiffs suffered damages, including damages to their professional reputations, emotional injuries, monetary damages suffered in reliance on false representations, the costs of terminating of Plaintiffs' business relationship with Defendants to avoid association with racketeering, and other consequential damages.

159.    By reason of the Defendants' violation of 18 U.S.C. § 1962, Plaintiffs are entitled, pursuant to 18 U.S.C. § 1964(c), to threefold the damages sustained, with interest thereof at a reasonable rate per annum, and a reasonable attorney fee in connection herewith.

## Thirteenth Cause of Action (Account Stated Dr. H & TMG)

160.    Plaintiffs re-allege and incorporate by reference the above paragraphs of this Complaint as though fully set forth herein.

161.    Dr. H and TMG agreed to pay for Plaintiffs' analysis and for use of the neural scanning equipment. Once payment was not made, the relationship between Dr. H and TMG and Plaintiffs became one of debtors and creditors, respectively.

---

**COMPLAINT**

31

162.     Plaintiffs provided invoices and, on several occasions, received confirmation from Dr. H and other agents of TMG that the amount was indisputably owed and past due.

163.     Plaintiffs continued to provide and Dr. H and TMG continued to receive the benefits of Plaintiffs' services, but, as of the time of the filing of this Complaint, Dr. H and TMG had not performed according to the agreement.

164.     Dr. H and other agents of TMG promised, expressly or impliedly, to pay the amount stated, but have still not made those payments.

**Fourteenth Cause of Action (Misappropriation of Trade Secrets – Dr. H & TMG)**

165.     Plaintiffs re-allege and incorporate by reference the above paragraphs of this Complaint as though fully set forth herein.

166.     Dr. H acquired trade secrets from Dr. Starr through his impropriety and deceit, which included information not generally known to or ascertainable by those outside of Plaintiffs' organization.

167.     The information Dr. H misappropriated derived value on top and independent of its intrinsic value by being kept secret.

168.     Plaintiffs exercised reasonable efforts to preserve the secrecy of the information improperly acquired by Dr. H at the time it he obtained it.

169.    Dr. H disclosed the trade secret protected information to TMG and TMG, through its agents operationalized that information for the profit of TMG.

### Fifteenth Cause of Action (Quantum Meruit – Arasi, Dr. H, & TMG)

170.    Plaintiffs re-allege and incorporate by reference the above paragraphs of this Complaint as though fully set forth herein.

171.    Plaintiffs performed services that inured to the benefit of Dr. H and TMG, in good faith and reasonably expected to be compensated for those services based on a persistent reassurance that they intended to make good on an obligation to do so.

172.    Neither Dr. H nor TMG paid for those services performed, which Plaintiffs performed at the request of Plaintiffs and from which they received the benefit of.

173.    Therefore, Plaintiffs are entitled to the outstanding compensation in a reasonable amount to be proven at trial, but in no event less than $33,768.22.

### V.    PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendants, and that the Court award Plaintiffs as follows:

A. On the first cause of action, for expectation damages in an amount to be proven at trial, which Plaintiffs estimate to be at least $80,000;

B. On the second cause of action, for compensatory damages in an amount to be proven at trial, which Plaintiffs estimate to be at least $33,768.22 and for punitive damages;

C. On the third cause of action, for compensatory damages in an amount to be proven at trial, which Plaintiff estimates to be at least $90,000 and for punitive damages;

D. On the fourth cause of action, for compensatory damages in an amount to be proven at trial, which Plaintiffs estimate to be at least $70,000;

E. On the fifth cause of action for restitutionary damages in an amount to be proven at trial, which Plaintiffs estimate to be at least $33,768.22 and for punitive damages.

F. On the sixth cause of action for restitution of all money improperly obtained as a result of unfair competition, estimated to be at least $ 100,000;

G. On the seventh cause of action for return of an estimated $35,000;

H. On the eighth cause of action, for compensatory damages Plaintiffs estimate to be at least $80,000 and for punitive damages;

I. On the ninth cause of action, for compensatory damages in an amount to be proven at trial, estimated to be at least $80,000 and for equitable remedies, including disgorgement of profits in an amount to be proven at trial;

---

**COMPLAINT**

34

J.  On the tenth cause of action, for compensatory damages in an amount to be proven at trial, that Plaintiffs estimate to be at least $80,000.

K. On the eleventh cause of action, for compensatory damages that Plaintiffs estimate to be at least $80,000;

L.  On the twelfth cause of action, for threefold damages actually sustained and the costs of suit, in a sum not less than $240,000, including a reasonable attorney fee, pursuant to 18 U.S.C. § 1964(c) with interest thereon at a reasonable rate, other and further relief as the Court may deem appropriate pursuant to 18 U.S.C. § 1964, and such other and further relief as the Court may deem proper and just in the premises.

M. On the thirteenth cause of action, $33,768.22 of actual damages;

N. On the fourteenth cause of action, in an amount presently unknown but, upon information and belief, in excess of this court's jurisdictional minimum;

O. On the fifteenth cause of action, actual damages amounting to at least $33,768.22, and disgorgement of all profits;

P.  On all of the causes of action listed above, Plaintiffs further pray for the following:

     a.  costs of suit;

     b.  prejudgment and post-judgment interest on the foregoing amounts

     c.  any further relief the court deems just and proper.

1   DATED: November 1, 2018       SHEETS & ASLANIAN

Los Angeles, California


By:

/s/ Tyler T. Sheets
Tyler T. Sheets, Esq. (SBN 315891)

*Attorneys for Plaintiffs,*
*International Neurofeedback*
*Logistics, Inc.*
*Myneurva Holdings, Inc.*
*INL-MD Brain Data Mining, LLC*
*Dr. Fred Starr*